AMERICAN FEDERAL SAVINGS BANK, ғка FIRST FED-
ERAL SAVINGS AND LOAN ASSOCIATION OF
NEVADA, Appellant, v. COUNTY OF WASHOE, a
political subdivision of the State of Nevada,
Respondent.

No. 20787

December 7, 1990                               802 P.2d 1270

*A. D. Jensen* and *Allan D. Jensen,* Reno, for Appellant.

*Erickson, Thorpe & Swainston, Ltd.,* Reno, for Respondent.

## OPINION

*Per Curiam:*

### THE FACTS

In this appeal, the court is asked to determine the effect of the Nevada Industrial Insurance Act ("NIIA") on an express contract that may require an employer to indemnify a third-party for compensation the third-party was required to pay the employer's employee for a work related accident. Appellant American Federal Savings Bank, formerly known as First Federal Savings & Loan Association of Nevada ("First Federal"), appeals from the district court's ruling that the NIIA voids such indemnity contracts because they increase the liability of an employer. For the following reasons, we reverse.

On May 24, 1983, respondent, Washoe County, contracted to lease the "Union Federal Building" from appellant, First Federal. Under the terms of the lease contract, Washoe County was required to pay for the maintenance of the leased building, and was also required to secure $1,000,000.00 in public liability insurance covering both itself and First Federal. Further, the lease agreement required Washoe County to indemnify First Federal for any loss, injury, death, or damage to persons allowed to use or occupy the premises.

Thereafter, on April 17, 1986, an employee of Washoe County named Rosslyn Fuller injured herself as she exited the leased building's elevator. On March 17, 1987, another employee of Washoe County, Robert M. Howell, injured himself when he fell down some stairs in the building. Since the County was a self-insured employer under the NIIA, Ms. Fuller and Mr. Howell were entitled to receive workman's compensation benefits, but were precluded from initiating personal injury lawsuits against Washoe County. *See* NRS 616.370(1). However, both employees filed separate actions for their personal injuries against First Federal as the owner of the building.

First Federal attempted to have Washoe County's attorney file a third-party complaint on behalf of First Federal for indemnification and breach of contract against Washoe County in Mr. Howell's lawsuit. First Federal's claims were based upon the indemnification provision of the lease agreement and First Federal's allegation that Washoe County had failed to maintain the building and had not obtained $1,000,000.00 in public liability insurance. The third-party complaint was never filed in the Howell case, but the parties stipulated to preserve any issues of liability between themselves for a later determination.

After a trial, Howell was awarded $120,000.00 in damages against First Federal, who was also required to pay court costs

and attorney's fees of $15,619.04. Rosslyn Fuller's action was still pending when the Howell judgment was entered.

Washoe County commenced the instant action against First Federal on June 6, 1988, seeking a declaration of Washoe County's obligations under the lease agreement in the event Rosslyn Fuller recovered damages from First Federal. First Federal counterclaimed against Washoe County to recover the damages it paid in the Howell case.[1]

On October 19, 1989, Washoe County moved for summary judgment in the declaratory action. The district court judge granted the motion, reasoning that the indemnity, maintenance, and insurance provisions of the lease agreement enlarged Washoe County's liability for its employees' work related injuries and, therefore, were void as a matter of law. This appeal followed.

## SUMMARY JUDGMENT

A grant of summary judgment is only appropriate where there are no genuine issues of fact to be resolved, and one party is entitled to judgment as a matter of law. NRCP 56(c); Leven v. Wheatherstone Condominium Corp., 106 Nev. 307, 791 P.2d 450, 451 (1990). First Federal asserts the County may have breached the insurance, maintenance and indemnification provisions of the lease agreement, and that the contract breach claims present viable issues of fact precluding a summary judgment. In response, Washoe County contends that the breach of contract allegations do not represent viable issues of fact because the lease agreement was void under the NIIA to the extent the lease required the County to indemnify First Federal for the compensation First Federal paid to Washoe County employees for work related injuries.

## BACKGROUND OF THE NIIA EXCLUSIVE REMEDY

One of the basic operating principles of the NIIA is that an employee is entitled to receive benefits when he suffers a "personal [injury] by accident . . . arising out of and in the course of . . . employment." NRS 616.270.[2] This operating principle provides an employee with the security of virtually guaranteed

---

[1]Eventually, Rosslyn Fuller's case was settled and dismissed without liability to First Federal.

[2]NRS 616.270 provides:

1. Every employer within the provisions of this chapter, and those employers who shall accept the terms of this chapter and be governed

compensation for job-related accidents, even in cases where the accident may not have been the consequence of the employer's negligence; however, in exchange for this security, the NIIA covered employee relinquishes his right to any remedy not allowed by the exclusive remedy provision of NRS 616.370(1). This statute says:

1. The rights and remedies provided in this chapter for an employee on account of an injury by accident sustained arising out of and in the course of the employment shall be exclusive, except as otherwise provided in this chapter, of all other rights and remedies of the employee, his personal or legal representatives, dependents or next of kin, at common law or otherwise, on account of such injury.

Since the NIIA imposes arbitrary maximum limits upon the benefits the employee receives from the employer for a work related injury, (see, e.g., NRS 616.580), it is possible that the employee may not be totally compensated for his loss by the employer because of the restrictions of the exclusive remedy rule in NRS 616.370(1). This makes a common law tort action against a third-party—who exists outside the employer-employee relationship—an appealing alternative to the injured employee, if that third-party is concurrently or exclusively responsible for the employee's injuries.

Such third-party lawsuits are not proscribed by the exclusive remedy provisions of the NIIA. Leslie v. J. A. Tiberti Constr., 99 Nev. 494, 496, 664 P.2d 963, 965 (1983). However, where the third-party, in an effort to defend against an adverse monetary judgment seeks indemnity back from the employee's employer pursuant to an implied or express contract agreement, the employer may turn to the exclusive remedy provisions of the NIIA for a defense.

### THE INDEPENDENT DUTY ANALYSIS

On first glance, it would appear the employer should be allowed such a defense under the exclusive remedy provision of the NIIA, where the exclusive remedy restriction of NRS 616.370(1) appears to limit the employer's overall liability to exactly the same degree that it limits the employee's rights against the employer. However, as Professor Larson points out in

---

by its provisions, as in this chapter provided, shall provide and secure compensation according to the terms, conditions and provisions of this chapter for any and all personal injuries by accident sustained by an employee arising out of and in the course of the employment.

2B A. Larson, Workmen's Compensation Law § 76.41 (1989), at pages 14-733 to 14-734:

> A closer reading of the [statutes] . . . makes this interpretation questionable, and the majority of courts have preferred a narrower construction. They reason as follows: the immunity conferred is only against actions for damages on account of the employee's injury; a third-party's action for indemnity is not exactly for "damages" but for reimbursement, and it is not "on account of" the employee's injury, but on account of breach of an *independent duty* owed by the employer to the third-party.

(Emphasis added.)

This court likewise has held that "*[a]bsent an independent duty owed to a third-party,* employers and co-employees are insulated by the provisions of the Nevada Industrial Insurance Act . . ., not only from liability to employees, but also from liability by way of indemnity to a third-party." Kellen v. District Court, 98 Nev. 133, 134, 642 P.2d 600, 600-601 (1982). (Emphasis added). *See also,* Outboard Marine Corp. v. Schupbach, 93 Nev. 158, 561 P.2d 450 (1977). However, while this court has adopted an independent duty analysis in its prior rulings, our decisions have defined "independent duty" by exception, rather than by rule.

### A.   Implied Indemnity Contracts.[3]

This court has rejected the contention that an *implied* indemnity contract—based upon an alleged independent duty of an employer to reimburse a third-party for compensation the third-party was required to pay to the employer's employee for a work related injury—arises out of an employer's purchase of a product from the third-party, or from the employer's negligent use of that product. *See Outboard Marine,* 93 Nev. at 164-165, 561 P.2d at 454; *Kellen,* 98 Nev. at 134-135, 642 P.2d at 600-601. In *Outboard Marine,* this court concluded that the manufacturer of an electric utility cart that set off an explosion injuring two employees could not recover the damage award paid to the employees by asserting an implied indemnity contract against the employer who purchased the cart.

The policy supporting this position was articulated in Santisteven v. Dow Chemical Company, 506 F.2d 1216 (1974),

---

[3]The right to indemnity may be express—arising out of a written contract, or implied—arising out of a relationship between the parties. Whether express or implied, indemnity shifts an entire monetary loss from one party to another. Chenery v. Agri-Lines Corp., 766 P.2d 751 (Idaho 1988).

where the federal court, while interpreting Nevada law, considered Dow Chemical's claim that Kennecott Copper Corporation had an implied contract to indemnify Dow for damages Dow paid to a Kennecott employee. Dow's claim rested upon an allegation that Kennecott had allowed the employee to misuse a product Dow had sold to Kennecott. The federal court felt Dow's argument turned indemnity on its head, and reasoned:

> Dow's liability arises because of a breach of a duty it owes to users of its products—in this instance, a worker. Assumably, Kennecott has also breached a duty owed to the same worker by negligence. Under Dow's theory, the whole burden of loss would be shifted whenever the employer was negligent in any way because the employer would have failed in its duty to extricate the third-party from possible liability.

*Id.* at 1219. Another court aptly framed the analytical problem by stating that "it would stretch the concept of contract out of relation to reality to impose upon the purchaser an implied contract with the manufacturer to use the [purchased] goods in such a way as to not bring liability upon the manufacturer." Olch v. Pacific Press & Shear Co., 573 P.2d 1355, 1358 (Wash. 1978).

## B. Express Indemnity Contracts.

While there are strong policy reasons to support our prior refusal to recognize implied indemnity contracts based upon the above fact situations, *express indemnity contracts* present entirely different issues and policy considerations. Virtually every state that has considered the question has concluded that an express contract *does* give rise to an independent duty that will allow a third-party to seek indemnity back from the employer where that third-party has paid damages to the employer's employee pursuant to a work related injury. *See* 2B A. Larson, Workmen's Compensation Law § 76.42 at 14-734 to 14-751. This majority of states so rule despite the exclusive remedy statutes common to their respective jurisdictions. *Id.* The next question asks whether Nevada should follow this majority position in light of a third statute, NRS 616.265, which is unique to this state. NRS 616.265, as it appeared at the inception of the lease agreement between Washoe County and First Federal,[4] provided as follows:

---

[4]It should be noted that in 1989, this statute was modified to read:

    1. Except as otherwise provided in subsection 2:

    (a) A contract of employment, insurance, relief benefit, indemnity, or any other device, does not modify, change or waive any liability created by this chapter.

    (b) A contract of employment, insurance, relief benefit, indemnity,

1.   No contract of employment, insurance, relief benefit, indemnity, or any other device, shall modify, change or waive any liability created by this chapter.

2.   A contract of employment, insurance, relief benefit, indemnity, or any other device having for its purpose the waiver or modification of the terms or liability created by this chapter shall be void.

Whether NRS 616.265 voids express contracts that require an employee to indemnify a third-party for compensation the third-party has paid to the employer's employee for a work related accident is an issue that has never been addressed by the Nevada Supreme Court. However, this issue has been addressed by the United States Court of Appeals for the Ninth Circuit in Aetna Cas. & Sur. Co. v. L. K. Comstock & Co., Inc., 684 F.2d 1267 (1982), where the federal court ruled such contracts were void because of NRS 616.265, and the Nevada Supreme Court's interpretation of this statute in *Outboard Marine* and Corrao Constr. Co. v. Curtis, 94 Nev. 569, 584 P.2d 1303 (1978). Respectfully, we disagree. We conclude that neither the NIIA nor this court's prior rulings support the federal court's conclusion in *Aetna.*

First, the overall structure and policy of the NIIA indicates the Act's purpose to regulate the rights and obligations running between an *employer and an employee,* as opposed to the rights and obligations running between an *employer and a third-party.*[5]

---

or any other device, having for its purpose the waiver or modification of the terms or liability created by this chapter is void.

2.   Nothing in this section prevents an owner or lessor of real property from requiring an employer who is leasing the real property from agreeing to insure the owner or lessor of the property against any liability for repair or maintenance of the premises.

Since the modified version of NRS 616.265 came into effect before the district court rendered its grant of summary judgment, it is arguable that the modified version may be applicable to this case, but we conclude it is not. If the indemnity agreement between Washoe County and First Federal was void, it would have been void at its inception in 1983 under the pre-1989 version of NRS 616.265. Accordingly, we apply the pre-1989 version of NRS 616.265 to this analysis.

[5]The dissenting opinion in *Aetna* aptly pointed out that while the NIIA establishes liability from the employer to the employee in a number of areas, there is nothing in the NIIA to establish any liability running between an employer and a third-party. As between an employer and an employee, under NRS 616.270, the employer has a duty to compensate an employee who sustains a work related injury. Under NRS 616.340, the employer has a duty to render all necessary first aid to the employee, and NRS 616.375 creates a common law liability when the employer fails to comply with the provisions of the NIIA. As has already been mentioned, the employee's remedies

Thus, as the dissenting opinion in *Aetna* argued, "[s]ection 616.265 prohibits indemnity contracts only if they affect rights created by the NIIA. Since an express indemnity contract between an employer and a third-party creates a contractual liability to a third-party, rather than waiving or modifying any liability created by the NIIA [between the employer and employee], such an agreement is not barred by the language of section 616.265." *Id.* at 1274. On the contrary, as a matter of public policy, we conclude the indemnity contracts in these cases should be enforced because they allocate risk between an employer and a third-party that is not allocated or covered by the Nevada Workman's Compensation Act.

Second, as this court has said, "[t]o date, the [Nevada] legislature has insulated the contributing employer and has voided indemnity *absent* an independent duty owing from the employer to the third-party." *Outboard Marine,* 93 Nev. at 165, 561 P.2d at 454 (emphasis added). Conversely, if an independent duty supports an indemnity agreement, the indemnity agreement will not be void under NRS 616.265. However, as already noted, implied indemnity generally cannot create this independent duty between an employer and a third-party. *See Outboard Marine,* 93 Nev. at 164-165, 561 P.2d at 454; *Kellen,* 98 Nev. at 134-135, 642 P.2d at 600-601. Thus, an express indemnity contract is all that remains to establish the independent duty recognized in *Outboard Marine.* Were we to rule that an express contract cannot establish an independent duty, there would be no means existent to establish such a duty even though we have recognized the independent duty analysis in our prior decisions.

Finally, enforcing the indemnity contract between First Federal and Washoe County would not be inconsistent with prior rulings of this court. In *Outboard Marine,* we reasoned that although an express contract for indemnity was not at issue, "if such a contract is voided by NRS 616.265, it is certain that there exists no room for implied indemnity, absent an independent duty owing from the employer . . . to the third-party." *Outboard Marine,* 93 Nev. at 165, 561 P.2d at 454. The federal court in *Aetna* offered this dicta to support its ruling that indemnity contracts in these cases are always void under NRS 616.265. We reason otherwise. Under a proper reading, we conclude this dicta mirrors the basic proposition that an indemnity agreement will be

against the employer for a work related injury covered by the NIIA is limited under the exclusive remedy rule of NRS 616.370, but the employee is not restricted in his remedies against a third-party who exists outside of the employee-employer relationship. *Leslie,* 99 Nev. 495, *supra.*

voided in these cases *unless* the agreement is based upon an independent duty.

Likewise, in *Corrao,* this court once again did not reach the question of whether or not NRS 616.265 voids an express indemnity contract. However, in *Corrao,* this court said:

> It would appear . . . that an indemnity agreement which changes or enlarges the liability of the employer by imposing a liability to its employee for damages caused by the negligence of a third-party would be void by reason of the express mandate of NRS 616.265; Outboard Marine Corp. v. Schupbach, 93 Nev. 158, 561 P.2d 450 (1977), concerning an alleged implied indemnity to the third-party found to have been negligent. The case before us, however, does not concern this situation at all since the third-party owners were found free of fault and, therefore, not responsible for the employee's injuries.

*Corrao,* 94 Nev. at 571, 584 P.2d at 1304. It is possible to read this dicta as creating an absolute bar to an indemnity agreement regardless of an independent duty analysis.[6] However, we conclude that a better reading of this dicta merely underscores the proposition that if an indemnity agreement enlarges the liability imposed by NIIA as between an employer and an employee, the indemnity agreement is not based upon an independent duty between the employer and a third-party, and is, therefore, void under NRS 616.265.

## CONCLUSION

In sum, we reject the federal court's holding in *Aetna,* and conclude that NRS 616.265, as a matter of law, does not void an express contract that requires an employer to indemnify a third-party for compensation the third-party has paid to the employer's

---

[6]The majority in *Aetna* concluded from this dicta, that:

> "[a]lthough it ultimately found it unnecessary to decide the question, the Nevada Supreme Court's statements in *Corrao* strongly suggest that the express and all-inclusive prohibition of the NIIA is applicable notwithstanding the existence of any 'particularized obligation' or 'independent duty,' and that the court would not create an implied exception to the plain statutory language prohibiting indemnity agreements." *Id.* at 1270.

We reject this view because it rests upon a faulty assumption that the *Corrao* decision overruled the holding in *Kellen* ("[a]bsent an independent duty owed to a third-party, employers and co-employees are insulated by the provisions of the Nevada Industrial Insurance Act . . . .") and the analysis used by this court in *Outboard Marine* ("[t]o date, the legislature has insulated the contributing employer and has voided indemnity absent an independent duty owing from the employer to the third-party.").

employee for a work related accident. Accordingly, we reverse the district court's grant of summary judgment in this case, and remand for further proceedings.