2 F.3d 1157
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
PERI & SONS FARMS, INC., a Nevada corporation, Plaintiff-Appellant,
v.
TRICAL, INC., a California corporation, Defendant-Appellee.
 No. 91-16484.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Feb. 4, 1993.
Decided July 8, 1993.
 
 Before FARRIS, POOLE and WIGGINS, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Peri & Son Farms, Inc., ("Peri Farms") purchased a soil fumigant from Trical, Inc. ("Trical"), which Trical applied to one of Peri Farms' onion fields. After suffering severe crop damage the following growing season, Peri Farms sued Trical in Nevada district court for negligence, strict products liability, breach of implied and express warranties, and intentional and negligent misrepresentation. The district court granted Trical's motion for a directed verdict on the strict products liability claim, but denied the same motion regarding the breach of warranty claims. Later, the district court denied Peri Farms' requested jury instructions for breach of implied and express warranties. Peri Farms voluntarily dismissed its intentional misrepresentation claim. The jury found that Trical was not negligent, and judgment was entered for Trical.
 
 
 3
 Peri Farms appeals the district court's grant of the directed verdict on its strict products liability claim and the denial of its requested breach of warranty jury instructions. We have jurisdiction pursuant to 28 U.S.C. Sec. 1332. We find that the district court erred in denying the requested jury instructions, but that the error was harmless. We also affirm the directed verdict on Peri Farms' strict products liability claim.
 
 FACTS
 
 4
 Peri Farms owns onion farms in Yerington, Nevada. In May of 1986, Peri Farms discovered that a portion of one of its fields was infected with white rot, a serious disease that attacks onions and easily spreads from one field to another. Peri Farms contacted Trical regarding a cure for the white rot. Trical proposed treating the field with Tricon 75/25 (75% methyl bromide and 25% chloropicrin). Trical assured Peri Farms that it would be able to plant onions in the fumigated field the following growing season. Peri Farms proceeded with the fumigation in June of 1987.
 
 
 5
 While the fumigation was in progress, Trical told Peri Farms that the fumigant would also kill mycorrhizal fungi, organisms that assist onion plants in the uptake of nutrients such as phosphorous and zinc. To remedy this, and per Trical's suggestions, Peri Farms applied zinc and phosphate fertilizer to the soil in November, 1987. In March of 1988, Peri Farms planted a crop of onions. The crop was slowed by "crusting" of the surface of the soil. Ultimately, the crop was severely-stunted in growth and Peri Farms suffered significant lost profits.
 
 DISCUSSION
 
 6
 I. The District Court Erred by Refusing to Instruct the Jury on Peri Farms' Claims of Breach of the Implied Warranty of Fitness for a Particular Purpose and Breach of Express Warranties; that Error, However, Was Harmless.
 
 
 7
 Peri Farms requested jury instructions regarding the implied warranty of fitness for a particular purpose, the creation of an express warranty that goods shall conform to a particular promise, and the damages that flow from breaches of warranties. The district court denied each instruction, stating that "I don't think this is a sale of goods ... case to which warranties apply."
 
 
 8
 We review challenges to the formulation of jury instructions for an abuse of discretion. Oviatt v. Pearce, 954 F.2d 1470, 1481 (9th Cir.1992). Our inquiry is "whether, considering the charges as a whole, the court's instructions fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." Id. (citations omitted). Moreover, "[w]hether a jury instruction misstates the elements that must be proved at trial is a question of law that is reviewed de novo." Caballero v. Concord, 956 F.2d 204, 206 (9th Cir.1992). An error in instructing the jury in a civil case requires reversal unless the error is more probably than not harmless. Id. at 206. Finally, we review Peri Farms' claim that the district court misinterpreted state law de novo. See Salve Regenia College v. Russell, 111 S.Ct. 1217, 1221 (1991); Tibbs v. Great American Ins. Co., 755 F.2d 1370, 1374 (9th Cir.1985).
 
 
 9
 A. The District Court Erred in Concluding that Nevada Law would not Apply Article 2 of the UCC to This Case.
 
 
 10
 The crux of the warranty issues in this case is whether the Nevada Uniform Commercial Code applies to the product and services that Trical provided Peri Farms. The modern trend is to apply Article 2 to mixed sales and services contracts. See United States, Etc. v. Haas & Haynie Corp., 577 F.2d 568, 572 n. 2 (9th Cir.1978). The only Nevada case on point, Worrell v. Barnes, 484 P.2d 573 (Nev.1971), indicates that Nevada would apply the UCC to Trical's contract with Peri Farms.
 
 
 11
 In Worrell, a contractor was hired to remodel the plaintiff's home. The work consisted of some carpentry and the connection of a water heater to an existing liquefied petroleum gas system. As part of this work, the contractor installed a "leaky fitting," which later caused a fire. The Worrell court concluded that the "leaky fitting" was a defective product and reversed the trial court's dismissal of the plaintiff's strict products liability and UCC Article 2 warranty claims. Id. at 576. The court's use of the term "leaky fitting" is ambiguous because it is unclear whether the court found that the actual fitting, as a product, was defective or whether "leaky fitting" refers to the contractor's defective installation of the fitting.
 
 
 12
 Trical argues that the fitting itself was a defective product and was not the result of the contractor's negligent installation. Worrell would therefore be distinguished because the product that Trical delivered, the fumigant Tricon 75/25, was not defective; it succeeded in eradicating the white rot. Under Trical's reading of Worrell, the UCC does not apply to Trical's allegedly negligent services. Trical's reading of Worrell is not correct.
 
 
 13
 The term "leaky fitting" in Worrell is clarified by that court's citation to Newmark v. Gimbels, Inc., 258 A.2d 697 (N.J.1969), as authority for its conclusion that the "leaky fitting" involved "goods" under the UCC. See Worrell, 484 P.2d at 576. In Newmark, the plaintiff sued the hair stylist that applied a permanent wave solution to the plaintiff's head for damages caused by the solution. The New Jersey Supreme Court held that the sale and application of the wave solution were a sale of "goods" covered by the UCC. Specifically, the court found the "distinction between a sale and the rendition of services [to be] a highly artificial one." Newmark, 258 A.2d at 700.
 
 
 14
 In Newmark, as here, the plaintiff relied upon the expertise of the defendant to select a product that was suitable for the particular purpose involved. The defendant in Newmark considered the plaintiff's needs and told her that, because of her fine hair, "she needed a 'good' permanent wave [solution]." Id. at 699. The plaintiff stated that she relied on this judgment. Id. In this case, the product that Peri Farms thought it was purchasing from Trical was a fumigant that would eradicate the white rot and would still permit Peri Farms to plant onions the following season. The district court so concluded. Like the plaintiff in Newmark, Peri Farms relied on the greater skill and knowledge of the seller to select a product that was suitable for its needs. We conclude that Nevada courts would find that this sales/services contract is governed by the UCC. The district court therefore erred in failing to give the requested warranty jury instructions.
 
 
 15
 B. The District Court's Denial of the Proposed Warranty Jury Instructions Was Harmless Error.
 
 
 16
 Even though the district court erred by failing to instruct the jury on warranty theories, the error was harmless. Peri Farms must prove proximate causation to recover for breach of warranty. See Uniform Commercial Code Sec. 2-314, Official Comment No. 13. Our review of the record indicates that Trical did not and could not make out a case for proximate cause.
 
 
 17
 Trical presented substantial testimony from two experts that the Peri Farms' onion crop failed because of toxic levels of salt in the soil and because of "crusting" of the soil. Trical also presented testimony of four onion farmers that had successfully planted onion crops shortly after fumigation with Tricon 75/25. Moreover, employees of Trical testified that fumigation with Tricon 75/25 had never, to their knowledge, stunted an onion crop. The jury of necessity would have found that Trical's evidence refuted the evidence presented by Peri Farms. Because Trical's breach of warranty did not cause Peri Farms' harm, the district court's error in failing to instruct regarding warranties was more probably than not harmless. See Caballero, 956 F.2d at 206.
 
 
 18
 II. The District Court did not Err by Granting Trical's Motion for a Directed Verdict on Peri Farms' Strict Products Liability Claim.
 
 
 19
 We review a district court's grant of a motion for a directed verdict de novo. In Re Hawaii Federal Asbestos Cases, 960 F.2d 806, 816 (9th Cir.1992). "A directed verdict is proper when the evidence permits only one reasonable conclusion as to the verdict...." Id. We consider all of the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See id. (citation omitted).
 
 
 20
 The district court granted Trical's motion for a directed verdict because it found that the product, Tricon 75/25, was not defective.[1] This was an incorrect basis for the granting of a directed verdict because, under Nevada law, strict products liability can be imposed where a product, even though faultlessly made, is unreasonably dangerous to place "in the hands of the user without suitable and adequate warnings concerning safe and proper use." See Outboard Marine Corp. v. Schupbach, 561 P.2d 450, 453 (Nev.1977). In fact, the district court found that warnings had not been given.[2] Therefore, the district court's stated reason for granting the directed verdict was insufficient. Nevertheless, we uphold the directed verdict because Trical could not have reasonably foreseen the need to warn Peri Farms. See Marino v. Vasquez, 812 F.2d 499, 508 (9th Cir.1987) (a district court's decision may be affirmed if it is correct, even if the district court relied on the wrong grounds or reasoning).
 
 
 21
 Under Nevada law, a product is not defective unless the defendant "has reason to anticipate" the danger that "may result from a particular use of his product and he fails to give adequate warning of such a danger." Outboard Marine, 561 P.2d at 453. (citation omitted). All of Trical's witnesses testified that Trical had no way of knowing that Tricon 75/25 would cause stunting; in fact, they testified that the fumigant would not cause stunting. One of Peri Farms' experts did testify that stunting of various crops, caused by methyl bromide fumigation, had been documented over the last few decades in multiple publications. On cross-examination, however, Peri Farms' experts admitted that they were unaware of any specific onion field that was stunted because of methyl bromide chloropicrin fumigation (the ingredients in Tricon 75/25), although one expert had observed stunting with methyl bromide formaldehyde fumigation. No credible evidence was presented that Trical had reason to foresee the need to warn Peri Farms that Tricon 75/25 would cause stunting. Even viewing the evidence in the light most favorable to Peri Farms, we conclude that the district court did not err in granting the directed verdict. See Outboard Marine, 561 P.2d at 453.
 
 CONCLUSION
 
 22
 The judgment of the district court is AFFIRMED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 In granting the motion for a directed verdict, the district court stated:
 I can't make a products liability case out of this because the product that was sold, that is, the fumigant that fumigated the property, performed just exactly what it was represented to perform. And I don't think it did it too well or in any manner other than represented by the defendant.
 
 
 [2]
 The district court stated:
 There hasn't been any evidence at this point that any advice or warnings were given, timely, to require any of the plaintiffs to do anything to enable a crop to be grown after the fumigant was used.